CHARLES LANE, Plaintiff-Appellee, Cross-Appellant, *v.* THE BOARD OF EDUCATION OF FAIRBURY-CROPSEY COMMUNITY UNIT SCHOOL DISTRICT NO. 3, Defendant-Appellant, Cross-Appellee.

Fourth District   No. 13280

Opinion filed June 3, 1976.

Thompson & Strong, of Pontiac (Kenneth L. Strong, of counsel), for appellant.

Costigan, Wollrab, Fraker, Wochner & Neirynck, of Bloomington, for appellee.

Mr. JUSTICE CRAVEN delivered the opinion of the court:

Plaintiff, Charles Lane, after serving in the capacity of principal of the Fairbury-Cropsey Community Unit School District No. 3 high school, was notified that he would not be rehired as principal and would be assigned to teaching duties. Plaintiff filed suit for damages against the defendant board of education, alleging that he had been deprived of property without due process of law as the result of defendant's refusal to rehire him as principal. After a bench trial, the court found that plaintiff had been denied his property right in the position of high school principal and awarded damages of $7529 and costs to plaintiff. Defendant appeals from that judgment. The court also found that defendant acted in good faith in its reassignment procedure. Plaintiff has filed a cross-appeal from that finding, as well as from the trial court's denial of plaintiff's claim of damages resulting from a capital loss on the sale of his residence when he moved to accept a position elsewhere.

Plaintiff had been hired as a school principal by defendant in 1967 and had continued in the position of school principal through the completion of the 1972-1973 academic year. During the 1972-1973 school year, he was employed as principal of Fairbury-Cropsey high school based upon a written contract providing for a period of employment of 11 months at a salary of $19,000. During this period of time, plaintiff held the proper supervisory (administrative) certificate required by the State Teachers Certification Board, and he also held a certificate which entitled him to teach high school English and physical education. As principal, plaintiff had no regular teaching duties. In March 1973, defendant advised plaintiff that he would not be rehired as principal for the 1973-1974 school year and that he would be assigned to teaching duties. Thereafter, plaintiff was notified that he would receive a salary of $13,072, which was commensurate with that paid other teachers of similar experience, qualifications and responsibilities in the district. Defendant did not provide plaintiff with any reasons for his transfer and did not allow his request for a hearing on the matter. In June 1973, plaintiff gave written notice to the school district that he would not be teaching for that district in 1973-1974. Plaintiff signed a contract in June 1973 to be principal of a high school in Bradford, Illinois, at a salary of $16,000. He has been employed in the Bradford school district since that time.

In the trial, plaintiff contended that he had acquired a property interest

in continued employment in the position of high school principal based upon State statute. The trial court rejected that theory and, in doing so, found that defendant had acted in good faith in its attempt to assign plaintiff to teaching duties. The trial court did, however, find that plaintiff had acquired a property interest in continued employment as a high school principal on the basis of custom. The trial court awarded damages to plaintiff in the sum of $7529 plus the costs of suit. The trial court also denied plaintiff recovery for the alleged capital loss on the sale of his residence.

■■ The first issue is whether plaintiff acquired a property interest in continued employment in the position of high school principal based upon State statute. The issue is governed by section 24—11 of the School Code of Illinois (Ill. Rev. Stat. 1971, ch. 122, par. 24—11), which provides teachers and school administrators with a form of job security commonly referred to as tenure and statutorily denominated as "contractual continued service." The relevant provisions of section 24—11 were summarized in *Lester v. Board of Education,* 87 Ill. App. 2d 269, 230 N.E.2d 893:

> "Section 24—11 of the School Code provides, among other things, that 'teacher' means any or all school district employees regularly required to be certified under the laws relating to the certification of teachers; that 'board' means a board of education; * * *. It further provides that this section and succeeding sections do not modify any existing power of the board, except with respect to the procedure for the discharge of a teacher and reductions in salary as thereinafter provided; and that contractual continued service status shall not restrict the power of the board to transfer a teacher to a position which the teacher is qualified to fill, or to make such salary adjustments as it deems desirable, but unless reductions in salary are uniform or based upon some reasonable classification, any teacher whose salary is reduced shall be entitled to a notice and a hearing as thereinafter provided in the case of certain dismissals or removals." (87 Ill. App. 2d 269, 272-73, 230 N.E.2d 893, 895.)

Hence, a principal does not acquire tenure as a *principal* under section 24—11, but does acquire tenure as a *certified employee.* As provided by statute, under such circumstances a principal may be reassigned without notice and a hearing to a teaching position at a reduced salary " ' based upon some reasonable classification,' provided the action is bona fide and not 'in the nature of chicanery or subterfuge designed to subvert the provisions of the Teacher Tenure Law.' " *(Van Dyke v. Board of Education,* 115 Ill. App. 2d 10, 18, 254 N.E.2d 76, 81; *Lester.)* Plaintiff thus has no statutory claim to a property right in continued employment as a principal.

■■■ Plaintiff's cross-appeal is raised in the context of this issue, for the propriety of the reclassification turns on whether defendant's action was in good faith and not done to subvert the tenure provisions of the School Code. Plaintiff argues that defendant intended to dismiss him entirely but found that it could not (without affording him notice and a hearing); that the board did not discuss the reassignment prior to its vote not to offer him a contract for the 1973-1974 school year; that the vote was actually a vote to dismiss him entirely; and that the president of the board of education informally asked him to resign. There was evidence, however, that prior to its official action, the board was advised that plaintiff was a tenured teacher. There was also evidence that the discussions among defendant's members involved the retention of plaintiff as principal, as opposed to retention in any position. Furthermore, it was not defendant's policy to assign teachers to specific teaching duties. That responsibility was left to the school superintendent, who was notified to reassign plaintiff to teaching duties. Plaintiff points out that there were no vacancies in the school system in the areas in which he was qualified to teach at the time of the reassignment or during the rest of the school year. Plaintiff, however, gave written notice of his resignation in June of 1973, which was about two months prior to the start of the school year. Therefore, plaintiff can only speculate as to what arrangements could or would have been made by the school superintendent to use him as a teacher in one of the areas of his competence. The determination whether defendant acted in good faith is for the trier of fact. The trial court's decision under such circumstances is not to be disturbed unless contrary to the manifest weight of the evidence. Our review of the record before us leads us to conclude that the trial court's finding is supported by the record and is not contrary to the manifest weight of the evidence.

The trial court found in favor of plaintiff on the theory that plaintiff had acquired a property interest in continued employment as a high school principal based upon "the custom of the defendant to treat administrative employees as a separate and distinct class and the understanding between the defendant and plaintiff that plaintiff was to perform solely administrative duties." Defendant customarily treated administrators differently than it treated teachers: Administrators' salaries (unlike teachers' salaries) are not paid under a uniform salary schedule; administrators are expected to perform duties before the start, and beyond the end, of the school year; and administrators are required to have a supervisory certificate not required of teachers.

The trial court's ruling was based on *Board of Regents v. Roth,* 408 U.S. 564, 33 L. Ed. 2d 548, 92 S. Ct. 2701, and *Perry v. Sindermann,* 408 U.S. 593, 33 L. Ed. 2d 570, 92 S. Ct. 2694, which stand for the proposition that a

property interest in continued employment may arise from understandings between the parties involved. (See *Powell v. Jones*, 56 Ill. 2d 70, 305 N.E.2d 166.) In *Roth*, a first-year teacher who had been hired for a fixed term of one academic year was notified that he would not be rehired. The Supreme Court rejected Roth's claim of a right to a statement of reasons and a hearing relevant to such action, holding that Roth had no property interests in continued employment because neither his contract nor any State statute, rule or policy provided him assurance of continued employment. The court ruled that a claimant needs more than an abstract desire or unilateral expectation of continued employment; he must have a legitimate claim of entitlement to it. (408 U.S. 564, 577, 33 L. Ed. 2d 548, 561, 92 S. Ct. 2701, 2709.) *Sindermann* involved a nontenured State college teacher whose teaching contract was not renewed. The college in *Sindermann* had no formal tenure system, but it had a policy which stated that a faculty member was "\* \* \* to feel that he has permanent tenure as long as his teaching services are satisfactory and as long as he displays a cooperative attitude \* \* \*." (408 U.S. 593, 600, 33 L. Ed. 2d 570, 579, 92 S. Ct. 2694, 2699)). Moreover, the State university system had adopted guidelines creating a form of job tenure for teachers employed in the system for seven years or more. The teacher who was dismissed in *Sindermann* had been employed in the system for ten years. The court ruled that such understandings fostered by State officials, although not part of the written contract of employment, could justify a claim of entitlement to continued employment.

■■ The case under consideration does not involve the kind of situation in which a property right is acquired. Tenure policies or understandings relate to continued employment. In the instant case, the customary practices cited by plaintiff and the trial court have nothing to do with continued employment. Differing treatment regarding duties, salary schedules, and certification may be relevant to employment, but they are not relevant to entitlement to continued employment. Defendant has done nothing to indicate its adoption of any sort of a tenure policy for principals. The character and extent of plaintiff's property interest in continued employment as a principal was created and defined by the terms of his employment contract. That contract was limited to an 11-month period and expired by its own terms at the conclusion of the 1972-1973 school year. The trial court's finding that plaintiff had acquired a property interest in continued employment as a high school principal beyond that period is thus contrary to the manifest weight of the evidence. We therefore reverse.

■■ As a result of our disposition of this case, plaintiff's cross-appeal for damages suffered in the sale of his residence is rendered moot.

Because plaintiff was not improperly dismissed from his position in Fairbury, any losses suffered as a result of his move to Bradford are not recoverable against defendant.

Judgment reversed.

TRAPP, P. J., and GREEN, J., concur.