FLORENCE SAIPE, Plaintiff-Appellant, v. PUBLIC SCHOOL TEACHERS' PENSION AND RETIREMENT FUND OF CHICAGO *et al.*, Defendants-Appellees.

First District (1st Division)   No. 85—1144

Opinion filed May 27, 1986.

Thomas I. Matyas, of Rosenthal & Schanfield, of Chicago, for appellant.

John E. Angle, of Kirkland & Ellis, of Chicago, for appellees.

JUSTICE QUINLAN delivered the opinion of the court:

This is an appeal from a judgment of the circuit court of Cook County affirming a decision of the board of trustees of the public school teachers' pension and retirement fund of Chicago (the board) against the plaintiff, Florence Saipe. The board's decision denied Florence Saipe pension credit for her six months of service to the United States government in 1945 as a "clerk/stenographer," and for her five years of service from 1962-67 to the Chicago board of education as a "theme reader." In this appeal, Mrs. Saipe asks that the decision of the board be reversed, or in the alternative, that it be reversed and remanded for a full and fair hearing.

Mrs. Saipe was employed as a certified teacher by the Chicago

board of education from 1967 until her retirement in 1985. She has received pension credit for that 18-year period, and service during that time period is not at issue in this case.

However, prior to her employment with the Chicago board of education, Mrs. Saipe was employed by the War Department from June through December 1945, as a "clerk/stenographer." During that time period, she was employed as a civilian and was not a member of the armed forces. Her responsibility was the preparation of instructional and educational materials which were used by others to teach air force personnel "jungle survival."

Subsequently, from 1962-67, Mrs. Saipe was employed by the Chicago board of education on an hourly basis as a "theme reader." Her primary responsibility in this position was to assist teachers by reading, analyzing and correcting students' essay papers.

In August of 1981, Mrs. Saipe applied to the board of trustees of the public school teachers' pension and retirement fund of Chicago for outside service credit toward her pension for her six months of service to the United States government as a "clerk/stenographer," and for her five years of service to the Chicago board of education as a "theme reader." On February 17, 1983, Mrs. Saipe appeared before the board to present her request for pension credit for this employment. Thereafter, on July 1, 1983, the board informed Mrs. Saipe that she was not entitled to pension credit for her services as a "clerk/stenographer" and "theme reader," and therefore, denied her requests.

The board contends that its reasons for denying Mrs. Saipe's requests were set forth in a one-page memorandum which is now part of the administrative record. The memorandum indicates that there were two principal reasons underlying the board's decision. First, section 17—106 of the public school teachers' pension and retirement fund of the Illinois Pension Code (Ill. Rev. Stat. 1983, ch. 108½, par. 17—106) specifically excludes "persons employed on an hourly basis" from membership in the fund, and second, the services of "theme reader" and "clerk/stenographer" were not included within the types of services which are creditable under the fund, as set forth in sections 17—133, 17—134, and 17—135 (Ill. Rev. Stat. 1983, ch. 108½, pars. 17—133, 17—134, 17—135). Further, the minutes from the meeting of February 17, 1983, which are also included in the administrative record, indicate that the board's legal counsel had recommended that Mrs. Saipe's requests be denied because the Illinois Pension Code contained no provision allowing outside service credit for the type of work described by Mrs. Saipe. A copy of the minutes was sent to

Mrs. Saipe and her attorneys.

On August 3, 1983, Mrs. Saipe filed a complaint in the circuit court of Cook County seeking judicial review of the board's decision under the Administrative Review Act (Ill. Rev. Stat. 1983, ch. 110, par. 3—101 *et seq.*). The trial court affirmed the board's ruling of March 21, 1985, holding that the board's construction of the Pension Code was correct. The judge also found that the plaintiff's contentions regarding the fairness and adequacy of the board's administrative hearing were irrelevant because the case was concerned solely with a question of law rather than fact. Mrs. Saipe has now appealed the circuit court ruling.

Under the Administrative Review Act, the circuit court has the power to review any final administrative decision and to consider all questions of law and fact presented by the entire record before the court. (Ill. Rev. Stat. 1983, ch. 110, par. 3—110.) The Act also provides that the circuit court has the authority to "affirm or reverse the decision [of the administrative agency] in whole or in part." (Ill. Rev. Stat. 1983, ch. 110, par. 3—111(a)(5).) It is well settled in Illinois that the decision of an administrative agency will only be reversed where it is legally erroneous (*City of East Peoria v. Illinois Pollution Control Board* (1983), 117 Ill. App. 3d 673, 679, 452 N.E.2d 1378), or is factually against the manifest weight of the evidence (*Ernzen v. Board of Trustees* (1981), 96 Ill. App. 3d 1143, 1147, 421 N.E.2d 1065).

The issue presented here, and as was presented in the trial court, is whether Mrs. Saipe should have been allowed pension credit for her employment as a "theme reader" and as a "clerk/stenographer" under the Pension Code. The facts are not in dispute. It is only their legal effect that is disputed. Hence, only a question of law is involved, and thus, the right concerning the power of the court to set aside a decision of an administrative agency when it was made against the manifest weight of the evidence has no application. (*Kensington Steel Corp. v. Industrial Com.* (1944), 385 Ill. 504, 509, 53 N.E.2d 395.) We must, therefore, determine whether the decisions of the board and the trial court were legally erroneous.

■ It is a well-settled principle of statutory construction that the intent and meaning of the legislature should be ascertained and given effect. (*General Motors Corp. v. Industrial Com.* (1975), 62 Ill. 2d 106, 112, 338 N.E.2d 561.) The language of the statute itself, moreover, affords the best means of determining the intent of the legislature, and if the intent of the legislature can be ascertained from the language, then such intention will prevail without resorting to other

aids of construction. (*Illinois Power Co. v. Mahin* (1978), 72 Ill. 2d 189, 194, 381 N.E.2d 222.) In the absence of statutory definitions indicating a contrary legislative intention, courts must, of course, assume that the words contained in the statute have their ordinary and popularly understood meaning. *People v. Dednam* (1978), 55 Ill. 2d 565, 568, 304 N.E.2d 627.

Another cardinal rule of statutory construction is that the intent and meaning of the statute are to be determined by giving meaning to the entire statute. Each provision should be construed in connection with every other provision so as to produce a harmonious whole. *Huckaba v. Cox* (1958), 14 Ill. 2d 126, 131, 150 N.E.2d 832; *Estep v. Department of Public Aid* (1983), 115 Ill. App. 3d 644, 647, 450 N.E.2d 1281.

It is in light of these well-settled principles of statutory construction that we now consider Mrs. Saipe's argument that the decisions of the board and the trial court were legally erroneous.

Mrs. Saipe's first claim for pension credit is for a period between June and December 1945 when she was employed by the War Department as a "clerk/stenographer." She contends that she is entitled to pension credit for this employment by reason of section 17–133 of the Pension Code (Ill. Rev. Stat. 1983, ch. 108½, par. 17–133), which grants regularly certified teachers the right to obtain credit "[f]or service in the public schools of the several states or in schools operated by or under the auspices of the United States." Mrs. Saipe maintains that her service to the War Department helped to teach a valuable and necessary skill to United States military personnel which was in a "[school] operated by or under the auspices of the United States." She argues that because the pension laws are to be liberally construed in favor of those who are intended to benefit from them, the words "service" and "school" should be afforded as broad a meaning as possible.

■ We agree that the pension statute should be liberally construed in favor of Mrs. Saipe, but as noted by this court in *People ex rel. Anastasia v. Civil Service Com.* (1973), 10 Ill. App. 3d 583, 586, 295 N.E.2d 127, we must not ignore the plain language of the statute. We, therefore, agree with the board's contention that section 17–133 cannot be read to apply to Mrs. Saipe's employment as a "clerk/stenographer." The word "service" as used in section 17–133 and read in context with article 17 of the Pension Code obviously means service as a certified teacher. It is undisputed that Mrs. Saipe was not serving as a certified teacher during her employment with the War Department. She was a "clerk/stenographer" who prepared some in-

structional materials for air force personnel.

Furthermore, the preparation of instructional materials for the training of air force personnel is clearly not a "[school] operated by or under the auspices of the United States" as those words are used in section 17—133. In our judgment the word "school" should be interpreted in accordance with its common and ordinary meaning. The Board submits that the legislature was intending to describe only those schools operated in the United States and foreign countries for the benefit of dependent children of American servicemen and women. While this interpretation might be somewhat narrow, we, nevertheless, find it unreasonable to believe that the legislature intended that civilians who provide instructional materials for training in "jungle survival" are teaching in "schools operated by or under the auspices of the United States." Ill. Rev. Stat. 1983, ch. 108½, par. 17—133.

Mrs. Saipe's second claim for pension credit is for her five years of service from 1962-67 to the Chicago board of education as a "theme reader." It is her contention that because her service as a "theme reader" provided a valuable contribution to the education of Chicago high school students, she clearly falls within section 17—106 of the Pension Code as a "contributor," "member," or "teacher," and should, therefore, receive pension credit for her service.

■■ We disagree with Mrs. Saipe's argument and find that her reliance upon section 17—106 is misplaced for two reasons. First, prior to 1967, when Mrs. Saipe was employed as a "theme reader," she was not a certified teacher, and accordingly, by the precise definition of section 17—106, which requires a teaching certificate to qualify under the section, she cannot fall within the definition of "contributor," "member," or "teacher." Second, there is no dispute that during her tenure as a "theme reader" Mrs. Saipe was employed on an hourly basis. Since section 17—106 specifically excludes "persons employed on an hourly basis," she was not for this additional reason either a "contributor," "member," or "teacher," and, therefore, her claim must fail on both of these grounds.

The statute before us is perfectly clear and the language used therein is plain and unambiguous, and, thus, we do not need to employ the rules of statutory construction to determine the legislature's intent. Accordingly, we find no merit in Mrs. Saipe's argument that the jobs of "clerk/stenographer" and "theme reader" were actually services intended by the legislature to be included as those entitled to outside pension credit. We, therefore, find the board's ruling denying Mrs. Saipe pension credit to be reasonable and proper under the cir-

cumstances here.

■■ Mrs. Saipe raises three issues in addition to the principal issue of whether she is entitled to receive pension credit for her employment as a "theme reader" and "clerk/stenographer." She first asserts that the trial court erred in deferring to the board's decision denying her pension credit. Mrs. Saipe claims that any deference to the implicit interpretation of the statute by the board was inappropriate, citing *Moy v. Department of Registration & Education* (1980), 85 Ill. App. 3d 27, 406 N.E.2d 191.

However, a review of the transcript reveals that Mrs. Saipe's argument is without foundation. The board never asked the trial court, nor does it ask this court, to defer to its interpretation of the statute. The trial court's remarks at the hearing, which are cited by the plaintiff in support of her argument, clearly demonstrate that the court understood that it was not bound by the board's construction of the statute. The trial court made an independent interpretation of the statute, an interpretation which happened to agree with the board's interpretation. For the reasons stated previously, we found that the board's decision denying Mrs. Saipe pension credit was reasonable, and thus, we need not address Mrs. Saipe's arguments regarding the applicability, if any, of the decision of *Moy v. Department of Registration & Education* (1980), 85 Ill. App. 3d 27, 406 N.E.2d 191.

Mrs. Saipe next asserts that there is no substantial basis in the record to support the board's decision. She argues that Illinois case law mandates that "a decision by an administrative agency must contain findings to make possible a judicial review of the agency's decision," citing *Reinhardt v. Board of Education* (1975), 61 Ill. 2d 101, 103, 329 N.E.2d 218. She contends that the record does not contain specific findings which disclose an adequate basis to sustain the action of the board, and thus, this court is precluded from engaging in any meaningful review of her case.

We disagree with Mrs. Saipe's contention and find the language in *Reinhardt* inapposite to this case. Unlike the situation in *Reinhardt*, where the court was presented with a question of fact concerning the determination of what constituted just cause for dismissal of a teacher under the provisions of the School Code (Ill. Rev. Stat. 1971, ch. 122, par. 10—22.4), we are concerned here with a question of law. No issues of fact are presented in this case. Furthermore, even if there were questions of fact for us to consider, neither the Pension Code nor the Administrative Review Act require that the board enter specific findings or reasons in support of its decisions. In the present case, we believe the record adequately established the foundation for

the board's action. We find no merit to Mrs. Saipe's claim that the record is insufficient to allow adequate judicial review.

■ Lastly, Mrs. Saipe contends that the board denied her a full and fair hearing. Specifically, Mrs. Saipe alleges that there were excessive delays in beginning the proceedings, there was an inadequate consideration of the documentary evidence, and there was an insufficient amount of time to conduct the hearing, all of which effectively denied her a full and fair hearing. For the reasons set forth below, we find no merit in Mrs. Saipe's argument.

Section 3—111(b) of the Administrative Review Act (Ill. Rev. Stat. 1983, ch. 110, par. 3—111(b)) provides as follows:

"Technical errors in the proceedings before the administrative agency or its failure to observe the technical rules of evidence shall not constitute grounds for the reversal of the administrative decision unless it appears to the court that such error or failure materially affected the rights of any party and resulted in substantial injustice to him or her."

In the instant case, it is undisputed that Mrs. Saipe called no witnesses and addressed no questions to the board; no time limit was placed on the presentation of Mrs. Saipe and her counsel; all board members were supplied with copies of the relevant documents; and Mrs. Saipe herself chose not to have a court reporter present. While it is also undisputed that a letter describing Mrs. Saipe's responsibilities as a "theme reader" and praising her for her outstanding contributions to the Chicago public school system was not presented to the board at the hearing, we find no error in the board's failure to consider the letter because it was irrelevant to the question of whether the Pension Code allows pension credits for the service of a "theme reader."

Therefore, for all of the above reasons, we conclude that the board's order and the decision of the circuit court of Cook County were correct, and, accordingly, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

BUCKLEY, P.J., and CAMPBELL, J., concur.