DIANA ABERNATHY, Petitioner-Appellee, v. BOARD OF EDUCATION OF COMMUNITY HIGH SCHOOL DISTRICT No. 218, COOK COUNTY, Respondent-Appellant.

First District (3rd Division)   No. 1—91—1629

Opinion filed December 2, 1992.—Rehearing denied April 22, 1993.

TULLY, J., dissenting.

Arthur C. Thorpe and James P. Bartley, both of Klein, Thorpe & Jenkins, of Chicago, for appellant.

Allen J. Oehlert, of Deffenbaugh, Loewenstein, Hagen, Gehlert & Smith, P.C., of Springfield, for appellee.

JUSTICE CERDA delivered the opinion of the court:
Respondent, Board of Education of Community High School District No. 218, Cook County, Illinois, appeals from the entry of summary judgment in favor of petitioner, Diana Abernathy, who filed a petition for writ of *mandamus* alleging that she was a tenured teacher when her teaching contract was not renewed. Respondent argues on appeal that: (1) petitioner did not hold a position that required its holder to be certified and therefore she was not a tenured teacher; (2) tenure cannot be achieved through estoppel, and the elements of estoppel were not present in this case; (3) the trial court's back pay award was excessive; and (4) petitioner was not entitled to reinstatement because there was no available position to which she was entitled. We reverse and remand.

Petitioner's petition for writ of *mandamus* alleged the following. She was a teacher with a teaching certificate issued by the

State of Illinois. Petitioner was first employed by respondent for the school year 1979-80 as a full-time certificated teacher on contractual continued service status; her position was vocational adjustment counsellor (VAC). According to one job description, the following were a VAC's responsibilities:

"1. D.V.R. [Department of Rehabilitation Services] Caseload Management

2. Procure DVR applications and interview client and parents with Prevocational Coordinator.

3. Liaison and public relations with all levels of DVR, school personnel, community employers, trade schools, etc.

4. Knowledge of vocational fields and training facilities and counseling and consultation regarding this area to students, parents, teachers, coordinators, etc.

5. Collate DVR services to students in the various work experience programs—glasses, hearing aids, psychotherapy, operations, etc., and vocational training.

6. Attendance at and participation in student staffings referred for DVR services and DVR clients.

7. Visitation of student job sites with prevocational coordinator.

8. Attend in service meetings for Prevocational Services Staff.

9. Be accountable to Supervisor of Prevocational Services."

The petition further alleged that respondent selected petitioner for tenure in a May 27, 1981, letter from the superintendent of schools stating: "It is my pleasure to inform you that you have been selected for tenure according to *The School Code of Illinois*, Section 24.11." But, as a result of improper pressure, petitioner executed a contract for employment as a nontenured teacher of typing and shorthand for the school year 1985-86. She was employed as a teacher for the school year 1985-86. Petitioner was notified in March 1986 that she would not be reemployed for the 1986-87 school year. Petitioner demanded a full-time position, and respondent replied that its action granting petitioner tenure was void.

The petition prayed for a writ of *mandamus* to be issued commanding respondent to reassign petitioner to a full-time teacher position.

Petitioner testified to the following relevant facts in her deposition. She held a bachelor's degree in business education and had some graduate credits in guidance and counseling of the handi-

capped. She had a teaching certificate in business education for grades 6 through 12. The VAC job description given to her through the Illinois Department of Rehabilitation Services (DORS) stated that the VAC was responsible for the following duties:

"1.) Act on referrals, through the staffing process.

2.) Arrange appointments with client and parents to make applications for services and explain referral and consent process.

3.) Prepare and submit to DORS, forms and materials necessary to carry on the program.

4.) Secure sufficient diagnostic information to determine eligibility for services: make appointments for medical exams; make appointments for psychological testing; and, make appointments for any other examinations which would assist in determining client's condition.

5.) Gather all data to determine substantial vocational handicap.

6.) Confer with client, parents and teacher to develop a complete diagnostic service plan which will help determine a suitable vocational goal.

7.) Develop individual work rehabilitation plans for each client.

8.) Keep updated, detailed chrono [sic] notes on the rehabilitation progress or status of each client.

9.) Prepare reports to be submitted by regional office to Division of Vocational Rehabilitation for: reimbursement, authorization; and services.

10.) Complete annual reviews on each client to update vocational plans.

11.) Visitations to workshops, schools, job stations, training centers, to keep in touch with vocational development of each client, and other rehabilitative facilities to keep abreast of client's rehabilitative progress.

12.) Provide job placement services to post-graduates.

13.) Provide additional training and other rehabilitative services to post-graduates not ready for competitive employment."

Respondent filed a motion for summary judgment in which it argued that petitioner could not as a matter of law be tenured because she was not employed as a teacher until 1985-86 and because her prior VAC position was not a teaching position requiring certification.

Margaret Niederer, manager of the internal operations section of the Illinois State Board of Education (ISBE), swore to the following in a supporting affidavit. She was familiar with the certification requirements, and for the years 1979 to 1986, ISBE did not require a teacher's certificate or other formal State board certification for the VAC position.

Bonnie Gladden, program administrator for DORS, swore to the following in a supporting affidavit. At the time that petitioner was hired as a VAC for the 1979-80 school year, ISBE was strongly urging school districts to hire individuals who held teaching certificates and special education certificates. There were several VACs who were granted tenure by other school districts.

Petitioner filed a motion for summary judgment in which she argued the following. She was a tenured teacher while employed by respondent, and respondent improperly terminated her employment. Respondent regularly and continuously identified her and treated her as a tenured teacher. Among the factors that indicated her tenured status as a regular faculty member were: (1) her job description; (2) the superintendent's letter about her selection for continued probationary employment, which leads to tenure; (3) the superintendent's letter advising her that she had been selected for tenure; (4) a 1984 notice to remedy issued to her by respondent regarding her performance (because a notice of remedy was required only when a teacher was tenured); (5) respondent's preparation of a membership information record for petitioner for the Illinois Teachers' Retirement System; (6) respondent's requirement that petitioner execute a loyalty oath that was required of teachers; (7) respondent's furnishing to petitioner of a memorandum to all faculty members who taught, stating her salary for the 1979-80 school year; (8) respondent's description in a 1979 memorandum of petitioner as having a district teacher number; (9) respondent's seeking of a copy of petitioner's teaching certificate; and (10) respondent's evaluation of petitioner on teacher evaluation forms.

Filed in support of petitioner's motion for summary judgment was the affidavit of Cindy DeHart, supervisor for monitoring for ISBE, who swore to the following. ISBE strongly encouraged school district administrators to hire VACs with teaching certificates because development of revised personnel regulations included an anticipated change to require VACs to hold teaching certificates. As part of the process of reviewing and revising credential requirements that was begun in 1979, it was recommended that VACs hold teaching certificates.

The trial court entered summary judgment in favor of petitioner, denied respondent's motion for summary judgment, and continued the case for discovery and for a hearing on damages. After hearing evidence on damages, the trial court entered judgment in favor of petitioner on the basis that she achieved tenure after being employed full-time for two school years and that respondent failed either to issue to her a notice of honorable dismissal or to dismiss her for cause. Petitioner was ordered reinstated, and she was awarded damages.

Respondent argues the following on appeal. In order to become a tenured teacher, one must hold a position that requires its holder to be certified, and petitioner did not hold a position that was required to be certified. At the time that petitioner was hired as a VAC, ISBE was only *urging* the hiring of VACs with teaching certificates. Petitioner was not a teacher but was responsible for finding job placements, getting students certified in DORS, and finding work sites. According to the DORS contract with respondent, a VAC was to "function as a rehabilitation counselor vs. prevocational personnel, teacher or school administrator." The VAC's educational and work experience qualifications were to meet minimal requirements established by DORS and respondent. A VAC was subject to joint termination by respondent and DORS upon documentation of the inability to perform required duties. Therefore, the contract was inconsistent with the control required by a school board over a teacher on a tenure track.

Petitioner argues that she was tenured because: (1) she was required to be certified because she taught and supervised students; (2) she was advised that she had to be certified; (3) she was employed under respondent's own contract; (4) she was reemployed by respondent at its board meetings; (5) she was supervised and evaluated as respondent's employee; (6) she was disciplined by respondent; (7) respondent paid her a salary and gave her benefits; and (8) she was paid with school funds. Petitioner refers to the statement on the requirements form that credentials criteria were in the process of being developed for her VAC position, and she argues that she was listed under a category entitled "other necessary professional" as opposed to noncertified personnel.

■■ ■ The School Code provides that any teacher who has been employed as a full-time teacher for a probationary period of two consecutive school terms shall "enter upon contractual continued service" unless given written notice of dismissal. (Ill. Rev. Stat. 1991, ch. 122, par. 24—11.) Such tenured teachers may be removed

or dismissed as a result of a decision to decrease the number of teachers upon written notice given by certified mail at least 60 days before the end of the school term. (Ill. Rev. Stat. 1991, ch. 122, par. 24—12.) The statute also provides for a procedure to dismiss tenured teachers for cause. (Ill. Rev. Stat. 1991, ch. 122, par. 24—12.) No one may "teach or supervise in the public schools nor receive for teaching or supervising any part of any public school fund, who does not hold a certificate of qualification" granted by ISBE or by the State Teacher Certification Board and a regional school superintendent. (Ill. Rev. Stat. 1991, ch. 122, par. 21—1.) "Teacher" is defined as "any or all school district employees regularly required to be certified under laws relating to the certification of teachers." Ill. Rev. Stat. 1991, ch. 122, par. 24—11.

In *McNely v. Board of Education of Community Unit School District No. 7* (1956), 9 Ill. 2d 143, 137 N.E.2d 63, cited by respondent, it was alleged that plaintiff's decedent entered into contractual continued service within the meaning of section 24—2 of the School Code (Ill. Rev. Stat. 1949, ch. 122, par. 24—2). Defendant board of education argued that the teacher tenure law did not apply to nonteaching superintendents. The court stated that the statutory definition of teacher as "any or all school district employees regularly required to be certified under laws relating to the certification of teachers" (Ill. Rev. Stat. 1949, ch. 122, par. 24—2) stated the legislature's policy to include within the teacher tenure law only those employees required to be certified. (*McNely*, 9 Ill. 2d at 148, 137 N.E.2d at 66.) The court held that, therefore, the only proper inquiry was whether superintendents were required to be certified. (*McNely*, 9 Ill. 2d at 148, 137 N.E.2d at 66.) Superintendents were held to be teachers within the meaning of the teacher tenure law because they were required to be certified. *McNely*, 9 Ill. 2d at 151, 137 N.E.2d at 68.

The following cases were relied upon by petitioner. In *Lane v. Board of Education of Fairbury-Cropsey Community Unit School District No. 3* (1976), 38 Ill. App. 3d 742, 744, 348 N.E.2d 470, 473, a principal who had had no regular teaching duties, but who was reassigned to teaching duties, was held not to have a statutory claim to a property right (tenure) in continued employment as a principal because section 24—11 (Ill. Rev. Stat. 1971, ch. 122, par. 24—11) provided that a certified employee could be so reassigned. In discussing the principal's argument that defendant school district had not acted in good faith in its reassignment procedure, the court stated that "[d]iffering treatment regarding duties, salary sched-

ules, and certification may be relevant to employment, but they are not relevant to entitlement to continued employment." (*Lane*, 38 Ill. App. 3d at 746, 348 N.E.2d at 474.) Petitioner relies on this statement in her argument that one's duties are not dispositive of entitlement to tenure, but we do not interpret the statement to mean that duties are not relevant to whether one is eligible for tenure. The court further stated:

> "The character and extent of plaintiff's property interest in continued employment as a principal was created and defined by the terms of his employment contract." *Lane*, 38 Ill. App. 3d at 746, 348 N.E.2d at 474.

Petitioner argues that very similar is *James v. Board of Education of School District No. 189* (1990), 193 Ill. App. 3d 406, 413-14, 549 N.E.2d 1001, 1005-06, in which registered nurses, who had taught in a practical nursing program and who were required to hold a provisional vocational certificate to teach, met the requirement of section 24—11 (Ill. Rev. Stat. 1983, ch. 122, par. 24—11) for entering tenured service. But, in contrast to petitioner in the instant case, the *James* plaintiffs taught classes.

In *Falato v. Teachers' Retirement Systems* (1991), 209 Ill. App. 3d 419, 568 N.E.2d 233, a teacher appealed from a decision denying him pension service credit for years when he was employed by a private corporation. Plaintiff argued that the definition of teacher included any certified teacher who taught in Illinois public common schools, whether or not the teacher was actually employed by an Illinois school district. The court rejected plaintiff's interpretation of the definition of teacher that was contained in the Illinois Pension Code (Ill. Rev. Stat. 1963, ch. 108½, par. 16—106(a)), which was a statute that is not at issue in the instant case. *Falato*, 209 Ill. App. 3d at 424, 568 N.E.2d at 236-37.

■ We reverse the trial court's entry of summary judgment in favor of petitioner on the basis that petitioner was not a teacher eligible for tenure when she worked as a VAC. The tenure statute clearly defines teacher to include only those school district employees who are required to be certified under laws relating to the certification of teachers (Ill. Rev. Stat. 1991, ch. 122, par. 24—11), and the teacher certification statute requires only those who teach or supervise to hold a certificate (Ill. Rev. Stat. 1991, ch. 122, par. 21—1). The record does not establish that petitioner's VAC position was either a teaching or a supervising position. Rather, petitioner was a counselor who assisted students and graduates in vocational

rehabilitation and job placement. The trial court should have entered summary judgment in favor of respondent.

Petitioner argues that she does not seek tenure by estoppel because she had tenure by statute. But petitioner does argue, apparently as an alternative argument for affirmance, that respondent was estopped from *denying* that she had statutory tenure on the basis that there were "elements of fraud" in respondent's conduct in compelling petitioner to sign the nontenure contract. The alleged misrepresentation made to petitioner was that a tenured counselor who became a teacher in the same school district would have to start over to earn tenure.

But, even assuming *arguendo* that respondent could be estopped from denying a status that is only achieved in accordance with State law, the entry of summary judgment cannot be affirmed on the basis of respondent's allegedly fraudulent conduct because there was a question of fact whether respondent knew that the alleged misrepresentation was untrue, which is one of the elements of equitable estoppel (*Willowbrook Development Corp. v. Pollution Control Board* (1981), 92 Ill. App. 3d 1074, 1079, 416 N.E.2d 385, 389-90). In addition, there is no allegation in petitioner's petition for *mandamus* that respondent knowingly made any false representations or that petitioner relied to her detriment on such false representations.

The judgment of the trial court entering summary judgment in favor of petitioner is reversed, the judgment of the trial court denying respondent's motion for summary judgment is reversed, and the cause is remanded with directions to enter summary judgment in favor of respondent.

Reversed and remanded with directions.

RIZZI, J., concurs.

JUSTICE TULLY, dissenting:

I respectfully dissent from the majority's view that petitioner was not a tenured teacher. In this case I feel that the petitioner, Diana Abernathy, was a teacher at the time of her termination. Petitioner testified in her deposition that she held a business degree in business education. In her summary judgment motion, she further stated that she was regularly and continuously identified as and treated as a teacher by respondent. Moreover, several factors were presented which raised a genuine issue of material fact as to

petitioner's status as a teacher, including: (1) a letter from the superintendent, informing her that she was selected for continued probationary employment, which leads to tenure; (2) the superintendent's letter advising her that she had been selected for tenure; (3) a notice of remedy, only sent to tenured teachers, was issued to her regarding her performance; (4) the requirement that petitioner execute a loyalty oath that was required of teachers; and (5) respondent's evaluation of petitioner on a teacher evaluation form.

For all of the foregoing reasons, I would hold that petitioner was a teacher at the time of her termination and the decision of the circuit court should be affirmed.